### DORA TARLE *vs.* PARK DRIVE REALTY INC.

Suffolk.    March 4, 1941. — April 3, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Landlord and Tenant*, Landlord's liability to member of tenant's family. *Negligence*, One owning or controlling real estate. *Evidence*, Matter of conjecture. *Contract*, Construction, Performance and breach.

The wife of a tenant could not maintain an action of tort against the landlord for personal injuries caused when a rat jumped on her from a garbage can, where the evidence left as mere matters of conjecture determination of the issues, whether the landlord could have taken more effective steps than he did to prevent the presence of the rat and whether he was negligent.

Even if the evidence warranted a finding that, in consideration of the tenant's remaining after he had complained of a nuisance caused by rats, the landlord had promised the tenant's wife, "I will give you a guaranty, I will take care and I will clean the rats out," a finding was not justified that he had absolutely warranted that no rat would appear in the future; and the tenant's wife could not maintain an action for breach of contract when she afterwards was injured by a rat jumping on her from a garbage can, where the evidence left as a mere matter of conjecture determination of the issue, whether such rat was one the defendant should have cleaned out.

CONTRACT OR TORT.  Writ in the Municipal Court of the Dorchester District of the City of Boston dated April 20, 1938.

On removal to the Superior Court, the action was tried before *Brogna*, J., who ordered a verdict for the defendant.

*S. Meline*, (*G. Goldberg* with him,) for the plaintiff.

*D. H. Fulton*, for the defendant, submitted a brief.

QUA, J.  The plaintiff lived with her husband in an apartment on "the middle floor" of a house owned by the defendant in that part of Boston known as Dorchester. The husband was a tenant of the defendant.  On November 11, 1937, the plaintiff, according to her testimony, put her garbage in "the place where the garbage stayed." A rat "jumped on her left shoulder, and she fell down and hit her head" and received personal injuries for which she brings this action with counts both in tort and in contract.

There was evidence of these facts: "Sometime" before the accident there were rats "in the garbage about these premises."  About a year before the accident the plaintiff talked with the defendant's agent, one McCollum, about the rats.  She told him her husband was going to move. McCollum said, "I am going to take care of this."  There were other talks between the plaintiff and McCollum, but what was said does not appear until an occasion about three months before the accident when McCollum came for the rent.  The plaintiff said her husband was going to move.  McCollum said to the plaintiff, "Don't, I will take care, I will give you a guarantee, I will take care and I will clean the rats out, and don't move, tell your husband not to move."  The plaintiff promised McCollum "she would talk to her husband and says she was going to stay there."  McCollum said he was going to clean the rats up right away.  "The plaintiff talked to her husband about what McCollum said, and as a result stayed at the place." After this McCollum "put a kind of poison."  "He put a powder around."  The defendant employed a janitor one of whose duties was "to keep the premises reasonably free from rodents."  In the two months preceding November

there had been complaints about rodents "from the tenants generally" to the defendant. To remedy the matter McCollum in August, September and October got poison from an exterminator company practically every week, which the janitor spread around.

On this evidence the plaintiff cannot recover in tort. It does not appear whether "the place where the garbage stayed" or the place where the rat came from was a part of the demised premises or remained in control of the defendant, and there is no evidence as to the condition of the premises at the time of the letting. But if we assume, without deciding, that somehow it could be found that the relation of landlord and tenant between the defendant and the plaintiff's husband imposed upon the defendant a duty to the plaintiff with respect to rats (see, however, *Fiorntino* v. *Mason*, 233 Mass. 451, 453; *Bailey* v. *First Realty Co.* 305 Mass. 306; *Domenicis* v. *Fleisher*, 195 Mass. 281), the landlord did not in any event become an insurer against their presence. Negligence must be shown. *Roderick* v. *Kondazian*, 258 Mass. 477. *Chambers* v. *Durling*, 306 Mass. 327, 331. There was no evidence of the defendant's negligence. It made efforts to get rid of the rats. It does not appear that it could have taken more effective steps. It does not appear where any of the rats came from. The character of the neighborhood and the locations of other houses or possible sources of rats are not shown. So far as appears all the rats may have come from outside the defendant's property from places over which it could exercise no control. So far as appears its efforts may have been successful for the time being, only to be followed by new incursions of rats attracted by the garbage. The evidence is too meager to carry the proof of negligence beyond the stage of conjecture. See *Del Rosso* v. *F. W. Woolworth Co.* 293 Mass. 424; *Maynard* v. *Carey Construction Co.* 302 Mass. 530, 533, 534.

The plaintiff cannot recover in contract. If we assume, without deciding, that the talk between the plaintiff and McCollum could be stretched into a contract for consideration between the plaintiff and the defendant whereby

the defendant agreed to do something about rats, and if we further assume, without deciding, that personal injury to the plaintiff was one of the consequences to be anticipated from a breach, still we regard the evidence as insufficient. Any contract between the parties must be construed reasonably. Although there is evidence that the word "guarantee" was used, the context will not reasonably support a finding that the defendant absolutely warranted that no rat would ever again appear. The most that can fairly be inferred is that the defendant agreed to "take care" and to "clean the rats out." There is no reasonably clear proof that it did not do this. It does not appear when the last rat had been seen before the day of the accident. The defendant may have cleaned out all rats over which it had any control or which it could reasonably be understood as agreeing to clean out. So far as we know the garbage may have been kept out of doors in a place accessible to all the rats of a congested neighborhood. On the record before us it is only conjecture that the rat which caused the accident came from the defendant's premises and was one which it had agreed to clean out.

*Exceptions overruled.*